**Hearing Date and Time: February 23, 2016 at 10:00 a.m. (ET)**
**Objection Deadline: February 16, 2016 at 4:00 p.m. (ET)**

Ira S. Dizengoff
David H. Botter
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

*Counsel to Eugene I. Davis, as Trustee*
*for the Quebecor World Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Quebecor World (USA) Inc., *et al.*, | Case No. 08-10152 |
| Debtors. | Jointly Administered |

**NOTICE OF HEARING ON MOTION TO**
**TERMINATE THE LITIGATION TRUST**

**PLEASE TAKE NOTICE** that a hearing has been scheduled for **February 23, 2016 at 10:00 a.m. (Eastern Time) before the Honorable James L. Garrity, United States Bankruptcy Judge, One Bowling Green, Room 601, New York, New York 10004**, wherein the Court will consider the *Motion to Terminate the Litigation Trust* (the "***Motion***")[1], filed by Eugene I. Davis as Trustee for the Quebecor World Litigation Trust (the "***Trustee***").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the relief requested in the Motion (i) must be in writing, (ii) shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the Southern District of New York, (iii) shall be

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

filed in accordance with General Order M-399 of the Bankruptcy Court, which can be found at www.nysb.uscourts.gov; (iv) shall set forth the name of the objecting party and the basis for the objection and the specific grounds therefore; (v) shall be filed with the Clerk of the Bankruptcy Court (with a courtesy copy delivered directly to the Chambers of the Honorable James L. Garrity), together with the proof of service thereof; and (vi) shall be served in a manner so as to actually be received upon the following:  (a) Akin Gump Strauss Hauer & Feld LLP, counsel to the Trustee, One Bryant Park, New York, New York 10036 (Attn.: Ira S. Dizengoff, Esq. and David H. Botter, Esq.) and 1700 Pacific Avenue, Suite 4100, Dallas, Texas 75201 (Attn: Sarah Link Schultz, Esq.); (b) Arnold & Porter LLP, counsel to the Reorganized Debtor, 399 Park Avenue, New York, New York 10022 (Attn: Anthony D. Boccanfuso, Esq., Michael J. Canning, Esq. and Rosa J. Evergreen, Esq.); (c) Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014; (d) Internal Revenue Service, 290 Broadway, New York, New York 10008; (e) all parties to any pending Preference Actions; (f) the Litigation Trust Beneficiaries; and (g) all parties in interest who have filed a notice of appearance in these cases pursuant to Bankruptcy Rule 2002, in each case so as to be received no later than 4:00 p.m. (prevailing Eastern time) on **February 16, 2016**.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served, an Order granting the Motion may be signed by the Bankruptcy Court.

Dated:  February 5, 2016
        New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP


By: /s/ Ira S. Dizengoff
        Ira S. Dizengoff
        David H. Botter
        Sarah Link Schultz (admitted *pro hac vice*)
        One Bryant Park
        New York, New York 10036
        (212) 872-1000

*Counsel to Eugene I. Davis, as Trustee*
*for the Quebecor World Litigation Trust*

**Hearing Date and Time: February 23, 2016 at 10:00 a.m. (ET)**
**Objection Deadline: February 16, 2016 at 4:00 p.m. (ET)**

Ira S. Dizengoff
David H. Botter
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

*Counsel to Eugene I. Davis, as Trustee*
*for the Quebecor World Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| Quebecor World (USA) Inc., *et al.*, | Case No. 08-10152 |
| Debtors. | Jointly Administered |

## <u>MOTION TO TERMINATE THE LITIGATION TRUST</u>

Eugene I. Davis, as Trustee (in such capacity, the "***Trustee***") for the Quebecor World

Litigation Trust (the "***Trust***"), by and through the undersigned counsel, hereby files this *Motion*

*to Terminate the Litigation Trust* (the "***Motion***") for entry of an order, substantially in the form

attached hereto as <u>Exhibit A</u> (the "***Proposed Order***"), pursuant to (i) sections 105(a) and 1142(b)

of title 11 of the United States Code (the "***Bankruptcy Code***"), (ii) the *Modified Third Amended*

*Joint Plan of Reorganization of Quebecor World (USA) Inc. and Certain Affiliated Debtors-in-*

*Possession* (as confirmed, the "***Plan***")[1] and (iii) the *Quebecor World Litigation Trust Agreement*,

dated July 21, 2009 (as amended, the "***Trust Agreement***"): (a) approving the Trust Agreement

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Plan.

Amendment (as defined below); (b) terminating the Trust; (c) authorizing the Trustee to undertake the Wind-Down Activities (as defined below) and to withhold the Wind-Down Funds (as defined below); (d) authorizing the Trust to transfer the Disputed Claims Reserve and the Defaults (as defined below) to the Reorganized Debtor (as defined below); (e) authorizing and directing the Reorganized Debtor to retain the Disputed Claims Reserve and the Default Proceeds (as defined below) in escrow and, upon final resolution of all Disputed Claims (as defined below), to distribute the Disputed Claims Reserve and the Default Proceeds to the Litigation Trust Beneficiaries (as defined below) in accordance with the Plan; (f) authorizing and directing the Reorganized Debtor to distribute any undeliverable distributions resulting from the Final Distribution (as defined below) as provided for in the Plan; (g) requiring the Reorganized Debtor to use Reasonable Efforts (as defined below) to sell any remaining Defaults prior to the Final Distribution, and to distribute any proceeds paid on account of the Defaults and/or realized from the sale of the Defaults to the Litigation Trust Beneficiaries in the Final Distribution; (h) providing the Reorganized Debtor with certain rights and protections, including with respect to the retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults, and the distributions contemplated herein; and (i) entitling the Reorganized Debtor to reimbursement from the Disputed Claims Reserve on account of reasonable and necessary costs and expenses with respect to its rights and responsibilities provided for herein, including, without limitation, with respect to the retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults, and the distributions contemplated herein.  In support of the Motion, the Trustee respectfully represents as follows:

## I.    <u>JURISDICTION</u>

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for relief requested herein are Bankruptcy Code sections 105(a) and 1142(b), Section 6.11 and Article XII of the Plan and Sections 3.1 and 3.2 of the Trust Agreement.

## II.    <u>BACKGROUND</u>

4.     On January 21, 2008, the above-captioned debtors and debtors in possession (the "***Debtors***" or, collectively, and together with Quad/Graphics, Inc. ("***Quad***"), the "***Reorganized Debtor***") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***"). On January 20, 2008 the Debtors' corporate parent, Quebecor World Inc., together with each of the Debtors, commenced a proceeding before the Quebec Superior Court, Commercial Division, for the Judicial District of Montreal (the "***Canadian Court***") for a plan of compromise or arrangement (the "***Canadian Proceeding***") under the Canadian Companies' Creditors Arrangement Act ("***CCAA***"). Each of the Debtors was joined in the Canadian Proceeding in order that each Debtor could obtain the protection of a stay under the CCAA as well as under the Bankruptcy Code.

5.     On May 18, 2009, the Debtors filed the Plan [Docket No. 1662].

6.     On July 2, 2009, the Court entered its *Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Joint Plan of Reorganization of Quebecor World (USA) Inc. and Certain Affiliated Debtors and Debtors-in-Possession* [Docket No. 1802]. In connection therewith, the Canadian Court sanctioned Quebecor World Inc.'s Second Amended and Restated Plan of Reorganization and Compromise (as amended, the "***Canadian Plan***").

7.      Each of the Plan and the Canadian Plan went effective on July 21, 2009 (the "*Effective Date*").  Also as of the Effective Date, the Trust was created and the Trust Agreement was executed.  *See* Plan §6.11(a).  Copies of relevant pages of the Trust Agreement are attached hereto as Exhibit B.[2]

8.      In connection with the Debtors' emergence from these Chapter 11 Cases and the Canadian Proceeding, Quebecor World (USA) Inc. changed its name to World Color (USA) Corp. and each of the affiliated Debtors changed its name to adopt the "World Color" name and, similarly, Quebecor World Inc. changed its name to World Color Press Inc.  On July 2, 2010, World Color Press Inc. was acquired by Quad.

9.      The Trust was established for the purposes of collecting and utilizing or liquidating the Contributed Claims and proceeds thereof for the benefit of the Litigation Trust Beneficiaries, including specifically, *inter alia*, the holders of Allowed Class 4 Claims under the Plan and the holders of Affected Unsecured Claims under the Canadian Plan (in each case as defined and provided for in the Plan and Canadian Plan).  *See* Plan § 6.11(a), Art. I.B.56, Art I.B.114; Ex. B, ¶ C.  The Contributed Claims, include, among other things, the various causes of action in favor of the Debtors arising under Bankruptcy Code section 547 (collectively, the "*Preference Actions*").  *See* Plan Art. I.B.56.

10.     Pursuant to the Trust Agreement, Eugene I. Davis was appointed as Trustee.  *See* Ex. B § 1.5.

11.     Pursuant to Section 6.11 of the Plan, the Trust was scheduled to terminate five years from the Effective Date, provided that such scheduled termination could be extended by

---

[2] Copies of the entire Litigation Trust Agreement will be made available upon request.

Court order, for one of more terms not to exceed one year each. *See* Plan §§ 6.11(a), (g); Ex. B § 3.1.[3]

12.     Shortly after the Trust was formed, the Trustee initiated approximately 1,745 adversary proceedings, and, to date, approximately $50.7 million in gross recoveries have been collected for the benefit of the Litigation Trust Beneficiaries.

13.     Approximately 27 of these initial 1,745 adversary proceedings remain open, including (i) approximately 22 proceedings where a claim has been filed in a defendant's bankruptcy, (ii) approximately 4 proceedings where defendants are no longer in business, (iii) approximately one proceeding needing entry of an order on Plaintiff's Motion for Default Judgment (all of the adversary proceedings that remain open, including items  (i), (ii) and (iii), collectively, the "***Preference Actions***").   In addition, there are approximately 33 judgments that have been rendered but not collected (the "***Defaults***").

14.     The Trustee is informed that currently there are approximately 200 disputed claims remaining to be resolved by the Reorganized Debtor, with many of these disputed claims held by creditors that are themselves currently the subject of pending Preference Actions. Because the associated Preference Actions have not yet been resolved, the Reorganized Debtor has been unable to address the claims of these creditors in the Chapter 11 Cases.   Once the Reorganized Debtor is able to do so, the holders of any allowed Class 4 Claims will become Litigation Trust Beneficiaries entitled to a *pro rata* share of the recoveries realized from the Preference Actions.   Currently, the Trust is holding approximately $1.074 million in reserve (the "***Disputed Claims Reserve***") on account of such unresolved Class 4 Claims and Affected

---

[3] 13.     On August 4, 2014, the Court entered an extending the duration of the Trust through and including July 21, 2015.  *See* Docket No. 5075.  On August 26, 2015, the Court entered an order extending the duration of the Trust through and including July 21, 2016.  *See* Docket No. 5121.

Unsecured Claims (collectively, the "***Disputed Claims***"), to be distributed, as appropriate, to the applicable Litigation Trust Beneficiaries upon final resolution of the underlying Class 4 Claims and Affected Unsecured Claims.

15.    To date, the Governing Board has declared, and the Trust has made, distributions in the amount of $29,500,000, with the last distribution occurring in June 2014 (the "***Last Distribution***").

16.    Certain of the distributions already made by the Trust to Litigation Trust Beneficiaries have been (i) returned as undeliverable or (ii) otherwise never negotiated or endorsed by the applicable Litigation Trust Beneficiary (the "***Undeliverable Distributions***").[4] Currently the Trust is holding approximately $21,147 in reserve on account of such undeliverable distributions (the "***Undeliverable Distributions Reserve***").

17.    With respect to the Undeliverable Distributions, the Trust has made numerous efforts to contact the applicable Litigation Trust Beneficiaries, including by mail, electronic mail and telephone.  During the summer of 2015 and again in early 2016, the Trust again sought to contact all such Litigation Trust Beneficiaries in an effort to obtain accurate delivery information (the "***Undeliverable Distributions Due Diligence***").  On information and belief, most if not all of the Litigation Trust Beneficiaries whose distributions remain undeliverable are out of business.

---

[4] Pursuant to section 4.4 of the Trust Agreement as originally drafted and executed, if a Litigation Trust Beneficiary did not assert a claim for an undeliverable distribution on or prior to one year after the Trust is terminated, the funds represented by such undeliverable distribution were to revert to or remain in the Trust for redistribution to the remaining Litigation Trust Beneficiaries.  *See* Ex. B § 4.4.  The Plan, on the other hand, provides that, with respect to undeliverable distributions held by the Reorganized Debtor, the Reorganized Debtor shall make reasonable efforts to locate holders of undeliverable distributions, but all claims for undeliverable distributions must be made on or before the later of (i) the first anniversary of the Effective Date or (ii) six months after such holder's Claim becomes an Allowed Claim, after which date all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary.  *See* Plan § 8.9(b).

### III.   **RELIEF REQUESTED**

18.     By this Motion, the Trustee requests entry of an order (i) approving the Trust

Agreement Amendment; (ii) terminating the Trust; (iii) authorizing the Trustee to undertake the

Wind-Down Activities and to withhold the Wind-Down Funds; (iv) authorizing the Trust to

transfer the Disputed Claims Reserve and the Defaults to the Reorganized Debtor; (v)

authorizing and directing the Reorganized Debtor to retain the Disputed Claims Reserve and the

Default Proceeds in escrow and, upon final resolution of all Disputed Claims, to distribute the

Disputed Claims Reserve and the Default Proceeds to the Litigation Trust Beneficiaries in

accordance with the Plan; (vi) authorizing and directing the Reorganized Debtor to distribute any

undeliverable distributions resulting from the Final Distribution as provided for in the Plan; (vii)

requiring the Reorganized Debtor to use Reasonable Efforts to sell any remaining Defaults prior

to the Final Distribution, and to distribute any proceeds paid on account of the Defaults and/or

realized from the sale of the Defaults to the Litigation Trust Beneficiaries in the Final

Distribution; (viii) providing the Reorganized Debtor with certain rights and protections,

including with respect to the retention of the Disputed Claims Reserve and the Default Proceeds,

the sale of the Defaults, and the distributions contemplated herein; and (ix) entitling the

Reorganized Debtor to reimbursement from the Disputed Claims Reserve on account of

reasonable and necessary costs and expenses with respect to its rights and responsibilities

provided for herein, including, without limitation, with respect to the retention of the Disputed

Claims Reserve and the Default Proceeds, the sale of the Defaults, and the distributions

contemplated herein.

### IV.   **BASIS FOR RELIEF**

19.     Bankruptcy Code section 105(a) states, in relevant part, that "The court may issue

any order, process, or judgment that is necessary to carry out the provisions of this title."   11

U.S.C. § 105(a).  Bankruptcy Code section 1142(b), in turn, states that "The court may direct the debtor or any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan."  11 U.S.C. § 1142(b).

20.    Pursuant to the Plan, the initial duration of the Trust was five years.  *See* Plan § 6.11(g).  In order to "realize maximum value with respect to the assets of the Litigation Trust," the Plan also provides for the extension of the initial term for one or more one-year terms.  *Id.* To date, the Court has approved two such one-year extensions in order to allow time for additional recoveries by the Trust for the benefit of the Litigation Trust Beneficiaries.  But while the Trust should be extended to maximize recoveries, in the same vein, once the maximum value of the Trust has been realized, the Trust should timely be terminated in order to maximize distributions to the Trust's beneficiaries.  Indeed, the Trust Agreement states that "[n]otwithstanding anything to the contrary in this Agreement, in no event shall the Litigation Trustee unduly prolong the duration of the Trust, and the Litigation Trustee shall, in the exercise of its reasonable business judgment and in the interests of the Litigation Trust Beneficiaries, at all times prosecute the Contributed Claims in a manner reasonably calculated to maximize net recoveries to the Litigation Trust Beneficiaries."  *See* Ex. B § 3.1.

21.    In addition, the Trust Agreement states that the Trust may be terminated by, among other things, unanimous consent of the Trustee and the Governing Board and order of the Bankruptcy Court.  *See id.* (as amended).  The Governing Board unanimously supports the relief requested herein.  Finally, the Plan provides the Court with continuing jurisdiction "to issue orders in aid of execution, implementation, or consummation of the Plan."  *See* Plan Art. XII(g).

8

### A.    Status of Recoveries for the Benefit of the Litigation Trust Beneficiaries

22.    The Trust's monthly revenues are variable and, except for *de minimis* amounts, have essentially stopped altogether. The Trust's monthly expenses, on the other hand, largely are fixed.  Consequently, monthly expenses now generally exceed monthly revenues, and keeping the Trust active serves only to ultimately reduce the value of distributions to the Litigation Trust Beneficiaries, rather than maximizing such value as contemplated by the Plan and the Trust Agreement.   In short, the continued existence of the Trust likely will result in lower aggregate distributions to the Litigation Trust Beneficiaries, and termination of the Trust is in the best interest of such beneficiaries.

23.    As previously stated, currently there are approximately 200 disputed claims remaining to be resolved by the Reorganized Debtor.  Until the associated Preference Actions have been resolved, the Reorganized Debtor will be unable to address many of these claims in the Chapter 11 Cases.  Once the Reorganized Debtor is able to do so, the holders of any newly-allowed Class 4 Claims and Affected Unsecured Claims will become Litigation Trust Beneficiaries entitled to a *pro rata* share of the recoveries realized from the Preference Actions, on account of which the Trust is holding the Disputed Claims Reserve.

24.    In light of this dependent and somewhat circular relationship between the resolution of the Preference Actions by the Litigation Trust and the Disputed Claims by the Reorganized Debtor, and the fact that the ongoing existence of the Litigation Trust is without value to the Litigation Trust Beneficiaries due to the significant ongoing monthly fixed expenses otherwise payable to such beneficiaries, termination of the Trust is in the best interests of both the Litigation Trust and the Reorganized Debtor and their applicable beneficiaries and creditors.

25.    Without the relief sought herein, however, the Trust cannot be terminated until (i) the remaining Disputed Claims are resolved and allowed, as appropriate, so as to enable the final

calculation to be made of the *pro rata* share of the aggregate recoveries to which each of the

Litigation Trust Beneficiaries is entitled on account of the Preference Actions, and (ii) the

distribution of the Disputed Claims Reserve in accordance therewith.

26.     In light of the foregoing, once it became evident that the Trust's monthly

expenses generally exceeded monthly revenue, the Trustee and the Trust's professionals began

exploring alternative scenarios to accelerate the timing of the termination of the Trust, including

discussions with the Reorganized Debtor regarding the same.

### B.     The Undeliverable Distributions

27.     As discussed above, certain of the distributions already made by the Trust to the

Litigation Trust Beneficiaries have been (i) returned as undeliverable or (ii) were never

negotiated or endorsed by the applicable Litigation Trust Beneficiary.  Currently the Trust is

holding approximately $21,147 in reserve on account of Undeliverable Distributions.

28.     As also discussed above, pursuant to section 4.4 of the Trust Agreement as

originally drafted and executed, if a Litigation Trust Beneficiary did not assert a claim for an

undeliverable distribution on or prior to one year *after the Trust is terminated*, the funds

represented by such undeliverable distribution were to revert to or remain in the Trust for

redistribution to the remaining Litigation Trust Beneficiaries.

29.     Consequently, in order to facilitate the ultimate distribution of the Undeliverable

Distributions Reserve as originally contemplated by the Trust Agreement, it would be necessary

for the Trust to maintain the capability to make such a distribution (and incur the expenses

associated therewith) for at least one year following the termination of the Trust, including the

continued retention of professionals during that time.  The provision originally provided for in

the Trust Agreement regarding Undeliverable Distributions thus had the effect of needlessly

10

accruing expenses borne by the Trust and ultimately reducing recoveries to the Trust Beneficiaries.

30.    Given the *de minimis* amount of the Undeliverable Distributions and the scope of the Undeliverable Distributions Due Diligence, and in order to facilitate the expeditious termination of the Trust as otherwise contemplated herein, the Trustee and the Trust's governing board (the "***Governing Board***") amended the Trust Agreement effective as of February 1, 2016 in accordance with the terms contained therein, to provide as follows (the "***Trust Agreement Amendment***"):

4.4    Undeliverable Property

(a)    If any distribution of Trust Proceeds or other Trust Assets to a Litigation Trust Beneficiary is returned to the Litigation Trustee as undeliverable, no further distribution to such Litigation Trust Beneficiary shall be made unless and until the Litigation Trustee is notified in writing of such Litigation Trust Beneficiary's then-current address, at which time all missed distributions shall be made to such Litigation Trust Beneficiary without interest, subject to Section 4.4(b) hereof.  For purposes of this Agreement, undeliverable distributions shall include checks sent to a Litigation Trust Beneficiary, respecting distributions to such Litigation Trust Beneficiary, which checks have not been cashed within six months following the date of issuance of such checks. Undeliverable distributions shall remain in the possession of the Litigation Trustee until the next Distribution Date that the relevant distribution becomes deliverable (in which event it shall be distributed to such Litigation Trust Beneficiary), subject to Sections 4.3(b) & 4.4(b) hereof.

(b)    Any Litigation Trust Beneficiary that does not assert a claim for an undeliverable distribution of Trust Proceeds or other Trust Assets held by the Litigation Trust on or prior to the first anniversary of the last distribution proceeding the date hereof shall no longer have any claim to or interest in the funds represented by such undeliverable distribution.  In such cases, all title to and all Beneficiary Interests in the funds represented by any such undeliverable distributions shall revert to or remain in the Trust and shall be redistributed to the remaining holders of Beneficiary Interests in accordance with Section 4.3(a) hereof, and the claim of such Litigation Trust Beneficiary or successor to such Litigation Trust Beneficiary to any Trust Assets shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary.  Any distributions with respect to the Trust returned as undeliverable following the date hereof shall be provided for by order of the Court.

*See* Ex. B § 4.4(b) (amended).  Because the Last Distribution occurred in June 2014, the Trust

Agreement Amendment thus serves to eliminate the Undeliverable Distributions Reserve[5] and

facilitates the expeditious termination of the Trust as otherwise contemplated herein.[6]

### C. Disposition of Remaining Trust Assets

31.      As of the date of the filing of this Motion, the Trust is holding approximately

$2.275 million in funds to be distributed to the Litigation Trust Beneficiaries (the "***Cash on***

***Hand***"), including the amounts previously held in the Undeliverable Distributions Reserve.  In

addition to the Cash on Hand, the other assets held by the Trust include (i) a reserve for the

Wind-Down Funds, (ii) the Disputed Claims Reserve, (iii) the Preference Actions and (iv) the

Defaults.

32.      With respect to the Cash on Hand, the Trustee has recommended, and the

Governing Board has approved, the distribution of these funds to the applicable Litigation Trust

Beneficiaries prior to the date of the termination of the Trust (the "***Interim Final Distribution***"),

with any Undeliverable Distributions resulting therefrom to be added to the Disputed Claims

Reserve.  Upon the timely and final resolution and closure of all of the pending Preference

Actions, the Trustee will transfer the Disputed Claims Reserve and the Defaults to the

Reorganized Debtor, in such form and manner as mutually acceptable to the Trustee and the

Reorganized Debtor, to be held in escrow by the Reorganized Debtor and distributed as provided

---

[5] Any distributions returned as undeliverable following the Final Distribution (as defined below) will be held by the Reorganized Debtor for ultimate distribution to the applicable Litigation Trust Beneficiaries pursuant to the terms regarding undeliverable distributions contained in the Plan and as further described herein.

[6] Although, pursuant to section 9.9 of the Trust Agreement, the Trustee and the Governing Board were fully authorized to effect the Trust Agreement Amendment, the Trustee also seeks Court approval of the Trust Agreement Amendment out of an abundance of caution.  *See* Ex. B ¶ 9.9.

for in this Motion and in the Proposed Order.[7]  Only the Wind-Down Funds and unpaid amounts

budgeted for pre-termination Trust expenses will be retained by the Trust post-termination.

### D.     Reorganized Debtor as Distribution Agent on Behalf of Trust

33.     To further facilitate the efficient and expeditious wind-down of the Trust and the

final resolution of the Disputed Claims, and following extensive and good-faith negotiations

between the Trustee and the Reorganized Debtor, the Reorganized Debtor has agreed that,

provided (i) the Proposed Order is entered by the Court not later than March 15, 2016, (ii) (a) all

of the remaining Preference Actions are finally resolved and the applicable adversary

proceedings in the Bankruptcy Court have been withdrawn and closed and (b) the Interim Final

Distribution is made, in each case on or before the date that is ten business days from the date the

Proposed Order is entered by the Court and (iii) the Reorganized Debtor is afforded certain rights

and protections as set forth below and in the Proposed Order, the Reorganized Debtor will hold

the Disputed Claims Reserve as Disbursing Agent (as defined in the Plan) until such time as the

Disputed Claims have been finally resolved.  Thereupon, the final determination will be made as

to the *pro rata* recovery to which each of the holders of allowed Class 4 Claims and Affected

Unsecured Claims are entitled, including as Litigation Trust Beneficiaries, and the Reorganized

Debtor will make the final distribution of the Disputed Claims Reserve and the Default Proceeds

(the "***Final Distribution***") to the applicable creditors, including as Litigation Trust Beneficiaries.

34.     In connection with, but prior to the Final Distribution, the Reorganized Debtor

will collect any proceeds paid on account of the Defaults, and will use Reasonable Efforts to sell

any remaining Defaults, with any net proceeds paid on account of the Defaults and/or realized

---

[7] Further, to the extent that any amounts become available on account of Undeliverable Distributions arising from the Interim Final Distribution after the transfer of the Disputed Claims Reserve to the Reorganized Debtor, all such amounts shall be forwarded by the Trust to the Reorganized Debtor to be added to the Disputed Claims Reserve.

from the sale thereof (collectively, the "***Default Proceeds***") to be held by the Reorganized Debtor for inclusion in the Final Distribution. "***Reasonable Efforts***" shall be defined as (i) contacting not less than two firms which normally and customarily purchase default judgments, including, but not necessarily limited to, ASK LLP and Oak Point Partners and (ii) selling the Defaults in exchange for the best offer received, if any.

35.      This expedited process will allow the Trust to be terminated and wound-up *post-haste*, thereby minimizing additional expenses and maximizing ultimate distributions to the Litigation Trust Beneficiaries and will ensure that all assets (except the Wind-Down Funds and reasonable costs and expenses incurred by the Reorganized Debtor) are timely distributed to the applicable Litigation Trust Beneficiaries.

36.      For the avoidance of doubt, the Reorganized Debtor's willingness to undertake and perform the Final Distribution is expressly contingent upon the conditions precedent that (i) the Proposed Order being entered by the Court not later than March 15, 2016 and (ii) (a) all of the remaining Preference Actions are finally resolved and the applicable adversary proceedings in the Bankruptcy Court have been withdrawn and closed and (b) the Interim Final Distribution is made, in each case on or before the date that is ten business days from the date the Proposed Order is entered by the Court (the "***Conditions Precedent***").

37.      Once the Trust is terminated, however, the Trustee and the Trust's professionals still will be required to perform certain post-termination activities required by the Trust Agreement to wind-down the Trust (collectively, the "***Wind-Down Activities***"). Specifically, the Wind-Down Activities include, among other things:

        a.      the retention of the Trust's books and records as required by the Trust Agreement;

        b.      federal tax reporting obligations for distributions made by the Trust prior to termination of the Trust; and

c.      providing support as needed to the Reorganized Debtor in connection with the transfer, retention and distribution of the Disputed Claims Reserve and the Default Proceeds, as contemplated herein.

38.      For the avoidance of doubt, approximately $91,750 in funds will be withheld from the Interim Final Distribution made by the Trust to the Litigation Trust Beneficiaries prior to termination of the Trust in order to cover reasonable and necessary costs and expenses, including out-of-pocket fees (including professional fees) associated with the Wind-Down Activities and the purchase of a tail policy with respect to the liability insurance coverage for the Governing Board and the Trustee (the "*Wind-Down Funds*").

39.      The Reorganized Debtor will be entitled to reimbursement on account of reasonable and necessary costs and expenses with respect to its receipt, retention and distribution of the Disputed Claims Reserve and the Default Proceeds, and the performance of its rights and responsibilities with respect thereto, all as contemplated herein, including out-of-pocket fees and expenses (including professional fees) incurred by the Reorganized Debtor with respect thereto.

**E.      The Proposed Order**

40.      The Proposed Order therefore, provides for, among other things, the following:

a.      Approval of the Trust Agreement Amendment.

b.      Termination of the Trust upon occurrence of the Conditions Precedent, each by or on a date not later than ten business days following the date of entry of the Order, and relief of the Trustee and the Trust's Governing Board of all duties and obligation with respect to the Trust; *provided, however,* that the Trustee and the Trust's professionals shall remain authorized and obligated to perform the Wind-Down Activities and retain the Wind-Down Funds.

c.      Upon final and timely resolution and closure of the Preference Actions and termination of the Trust, the Disputed Claims Reserve and the Defaults shall be transferred to the Reorganized Debtor, in such form and manner as mutually acceptable to the Trustee and the Reorganized Debtor.

d.      Upon final resolution of all Disputed Claims, the Reorganized Debtor shall have the authority and obligation to distribute the Disputed Claims Reserve and Default Proceeds as part of the Final Distribution to the Litigation Trust Beneficiaries in accordance with the Plan.  The Reorganized Debtor will be responsible for any tax reporting obligations required or necessitated by the Final Distribution.

15

e.      To the extent that any amounts become available on account of Undeliverable Distributions arising from the Interim Final Distribution after the transfer of the Disputed Claims Reserve to the Reorganized Debtor, all such amounts shall be forwarded to the Reorganized Debtor to be added to the Disputed Claims Reserve.

f.      Prior to the Final Distribution, the Reorganized Debtor will collect any proceeds paid on account on the Defaults, and the Reorganized Debtor will use Reasonable Efforts to sell any remaining Defaults, with any Default Proceeds paid on account of the Defaults and/or realized from the sale thereof to be held by the Reorganized Debtor for inclusion in the Final Distribution.

g.      The Reorganized Debtor, in its role as Disbursing Agent with respect to the distributions contemplated herein, shall be entitled to certain rights and protections, including, without limitation, those protections afforded to it in its role as Disbursing Agent under the Plan and in Section 8.10(d) of the Plan.  In particular, the Proposed Order provides that no Litigation Trust Beneficiary or any other party shall have recourse against any Debtor, the Reorganized Debtor, Quad, nor against any of their respective officers, directors, designees, successors, partners, affiliates, agents, employees, representatives, attorneys, or professionals on account of the Reorganized Debtor's receipt and retention of the Disputed Claims Reserve and the Defaults, any sale of the Defaults and any distribution of the Disputed Claims Reserve and the Default Proceeds, including the Final Distribution, or otherwise on account of its actions or performance as contemplated by the Motion.

h.      The Reorganized Debtor shall be entitled to reimbursement from the Disputed Claims Reserve on account of reasonable and necessary costs and expenses, including out-of-pocket fees and expenses (including professional fees) incurred by the Reorganized Debtor with respect to the Reorganized Debtor's rights and responsibilities provided for in the Motion, including, without limitation, with respect to its receipt and retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults, and the distributions contemplated in the Motion.

i.      The Proposed Order, and the relief provided for therein, shall be  expressly contingent upon the Conditions Precedent.  If the Conditions Precedent are not met, the Proposed Order shall be null and void at the sole discretion of the Reorganized Debtor upon written notice to the Trustee.

41.     Here, as discussed above, ample and good cause exists to provide the relief requested herein.  The Trustee and the Trust's professionals have been working diligently to prosecute the Preference Actions and collect any settlements negotiated or judgments entered with respect thereto, and the Trustee believes that virtually all collectible revenue has been realized by the Trust.

42.     The Trustee, in the exercise of his business judgment and upon consultation with the Trust's professionals and the Reorganized Debtor, and consultation with and approval of the

Governing Board, believes the relief sought herein is reasonable and fair and equitable and will provide maximum recovery to the Litigation Trust Beneficiaries, and therefore is in the best interests of the Litigation Trust Beneficiaries, and that good cause exists both under Bankruptcy Code section 1142 and section 105 for the Court to grant the relief sought herein.

## V.    NOTICE

43.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Reorganized Debtor, (iii) the Internal Revenue Service, (iv) all parties to any pending Preference Actions, (v) the Litigation Trust Beneficiaries, and (vi) all parties who have requested notices in these Chapter 11 cases.  The Trustee respectfully submits that no additional notice is necessary.

## VI.    NO PRIOR REQUEST

44.    No prior request for the relief sought herein has made to this or any other court.

## VII.    CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court (i) enter an order, substantially in the form attached hereto as Exhibit A, (a) approving the Trust Agreement Amendment; (b) terminating the Trust; (c) authorizing the Trustee to undertake the Wind-Down Activities and to withhold the Wind-Down Funds; (d) authorizing the Trust to transfer the Disputed Claims Reserve and the Defaults to the Reorganized Debtor; (e) authorizing and directing the Reorganized Debtor to retain the Disputed Claims Reserve and the Default Proceeds and, upon final resolution of all Disputed Claims, to distribute the Disputed Claims Reserve and the Default Proceeds to the Litigation Trust Beneficiaries in accordance with the Plan; (f) authorizing and directing the Reorganized Debtor to distribute any undeliverable distributions resulting from the Final Distribution as provided for in the Plan; (g) requiring the Reorganized Debtor to use Reasonable Efforts to sell any remaining Defaults prior to the Final

Distribution, and to distribute any proceeds paid on account of the Defaults and/or realized from the sale of the Defaults to the Litigation Trust Beneficiaries in the Final Distribution; (h) providing the Reorganized Debtor with certain rights and protections, including with respect to the retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults, and the distributions contemplated herein; and (i) entitling the Reorganized Debtor to reimbursement from the Disputed Claims Reserve on account of reasonable and necessary costs and expenses with respect to its rights and responsibilities provided for herein, including, without limitation, with respect to the retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults, and the distributions contemplated herein, and (ii) granting to the Trustee such other relief as is proper and justified.

Dated: February 5, 2016
     New York, New York

           AKIN GUMP STRAUSS HAUER & FELD LLP


           By: /s/ *Ira S. Dizengoff*                 
              Ira S. Dizengoff
              David H. Botter
              Sarah Link Schultz (admitted *pro hac vice*)
              One Bryant Park
              New York, New York 10036
              (212) 872-1000

              *Counsel to Eugene I. Davis, as Trustee*
              *for the Quebecor World Litigation Trust*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Quebecor World (USA) Inc., *et al.*, | Case No. 08-10152 |
| Debtors. | Jointly Administered |

## <u>ORDER GRANTING MOTION TO TERMINATE THE LITIGATION TRUST</u>

Upon the motion (the "***Motion***")[1] of the Trustee for entry of the Order terminating the

Litigation Trust; and it appearing that the Court has jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and this appearing to be a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue appearing proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion and the

opportunity for a hearing on the Motion was appropriate, and that no other or further notice need

be given; and the Court having considered the papers and arguments of counsel at the hearing in

support of the Motion, and after due deliberation and sufficient cause appearing therefore; and

the Court having found that the relief requested in the Motion is in the best interests of the

Litigation Trust Beneficiaries, **IT IS HEREBY ORDERED THAT:**

1.     The Motion is hereby granted in its entirety.

2.     The Trust Agreement Amendment is approved.

3.     The Trust hereby is terminated upon the date on which (i) all remaining open

Preference Actions have been finally resolved and the applicable adversary proceedings in the

Bankruptcy Case have been withdrawn and closed by the Trust and (ii) the Interim Final

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the
Motion.

Distribution has been made (together, the **"Conditions Precedent"**), provided that both of such

Conditions Precedent shall have occurred by or on a date that is not later than 10 business days

following the date of entry of this Order.  Should the Conditions Precedent not occur on or before

the date that is 10 business days following the date of entry of this Order, this Order shall be null

and void at the sole election of the Reorganized Debtor upon written notice to the Trustee.

4.      Except as otherwise set forth herein, the Trustee and each of the Governing Board

members are discharged, as of the Termination Date, from his or her respective duties under the

Plan and the Trust Agreement.

5.      Notwithstanding anything contained herein to the contrary, the Trustee's discharge

above shall affect neither the Trustee's obligation nor his authority to take all steps necessary to

wind-down the Trust and otherwise comply with the Trust Agreement with respect thereto,

including, without limitation, the Wind-Up Activities.  The Wind-up Activities shall include,

among other things:

a.      the retention of the Trust's books and records as required by the Trust Agreement;

b.      federal tax reporting obligations for distributions made by the Trust prior to termination; and

c.      providing support as needed to the Reorganized Debtor in connection with transfer, retention and distribution of the Disputed Claims Reserve and the Default Proceeds, as contemplated in the Motion.

6.      Wind-Down Funds in the amount of $91,750 shall be withheld from the Interim

Final Distribution in order to cover reasonable and necessary costs and expenses, including out-

of-pocket fees (including professional fees) associated with the Wind-Down Activities and the

purchase of a tail policy with respect to the liability insurance coverage for the Governing Board

and the Trustee.  Following the conclusion of the Wind-Down Activities, should any Wind-

Down Funds remain after the payment by the Trustee of all costs and expenses associated therewith, such funds shall be donated to a charitable organization of the Trustee's choice.

7.       As of the Termination Date, the Trust's professionals shall not be liable for any act or omission in their capacity on behalf of the Trustee or the Governing Board, except for their own gross negligence or willful misconduct.

8.       As soon as practicable following the Termination Date, and only following the Conditions Precedent, the Trustee is authorized to transfer the Disputed Claims Reserve and the Defaults to the Reorganized Debtor in such form and manner as mutually acceptable to the Trustee and the Reorganized Debtor (the "***Trust Assets Transfer***") to be held and distributed as set forth in the Motion and this Order.

9.       Other than in respect of the Wind-Up Activities, the Trust Assets Transfer shall be in full and final satisfaction of the Trustee's obligations with respect to the Litigation Trust Beneficiaries and the Trustee shall be afforded all of the protections regarding distributions provided in the Trust Agreement.

10.      The Reorganized Debtor shall hold the funds comprising the Disputed Claims Reserve and the Default Proceeds in escrow and, upon final resolution of all the Disputed Claims, shall distribute the Disputed Claims Reserve and the Default Proceeds as part of the Final Distribution to all applicable Litigation Trust Beneficiaries in accordance with the Plan.

11.      To the extent any amounts become available on account of Undeliverable Distributions arising from the Interim Final Distribution after the transfer of the of the Disputed Claims Reserve to the Reorganized Debtor, all such amounts shall be forwarded by the Trust to the Reorganized Debtor to be added to the Disputed Claims Reserve.

3

12.     With respect to any distribution contemplated herein, the Reorganized Debtor shall be considered the "Disbursing Agent" (as defined in the Plan) and shall be afforded all of the rights protections provided thereto in the Plan, including, without limitation, in section 8.10(d) of the Plan.  The Reorganized Debtor shall be responsible for any tax reporting obligations required or necessitated by the Final Distribution.

13.     Prior to such Final Distribution, the Reorganized Debtor shall collect any proceeds paid on account of the Defaults, and the Reorganized Debtor shall use Reasonable Efforts to sell any remaining Defaults, with the Default Proceeds paid on account of the Defaults and/or realized from the sale thereof to be held by the Reorganized Debtor for inclusion in the Final Distribution; *provided*, *however*, that "Reasonable Efforts" shall be defined as (i) contacting not less than two firms which normally and customarily purchase default judgments, including, but not necessarily limited to, ASK Financial LLP and Oak Point Partners and (ii) selling the Defaults in exchange for the best offer received, if any.

14.     The Final Distribution shall be in full and final satisfaction of the Reorganized Debtor's obligations with respect to its receipt and retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults, and any distribution of the Disputed Claims Reserve and the Default Proceeds, including the Final Distribution, or otherwise on account of its actions or performance as contemplated by the Motion and this Order, and no party or entity, including, without limitation, any holder of any Claim, Disputed Claim or any Litigation Trust Beneficiary shall have recourse against any Debtor, the Reorganized Debtor, Quad, nor to any of their respective officers, directors, designees, successors, partners, affiliates, agents, employees, representatives, attorneys, or professionals on account of any of the Reorganized Debtor's receipt and retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults,

4

and any distribution of the Disputed Claims Reserve and the Default Proceeds, including the

Final Distribution, or otherwise on account of its actions or performance as contemplated by the

Motion and this Order, except for any such party's own gross negligence or willful misconduct.

15.     The Reorganized Debtor shall be authorized and entitled to reimbursement from

the Disputed Claims Reserve on account of reasonable and necessary costs and expenses,

including out-of-pocket fees (including professional fees) and expenses incurred by the

Reorganized Debtor, with respect to the Reorganized Debtor's rights and responsibilities

provided for in the Motion and this Order, including, without limitation, with respect to its

receipt and retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the

Defaults, and the distributions contemplated in the Motion and this Order.  All compensation and

other amounts payable to, or on behalf of, the Reorganized Debtor are authorized to be deducted

from the Disputed Claims Reserve transferred by the Trust to the Reorganized Debtor hereunder.

16.     In the event this Order conflicts with the Trust Agreement or the Plan, the terms of

this Order shall prevail.

17.     The Court shall retain jurisdiction to interpret, enforce and resolve any disputes

arising under or related to this Order.


Dated:  _____, 2016
New York, New York

                                            _____
                                            THE HONORABLE JAMES L. GARRITY
                                            UNITED STATES BANKRUPTCY JUDGE

## **<u>Exhibit B</u>**

**Trust Agreement**

## QUEBECOR WORLD LITIGATION TRUST AGREEMENT

QUEBECOR WORLD LITIGATION TRUST AGREEMENT, effective as of July 21, 2009 (this "Agreement"), by and among Quebecor World (USA) Inc. and its subsidiaries and affiliates signatory hereto and any successors in interest, as settlors in their capacities as debtors in the Chapter 11 Cases (as defined below) (collectively, the "Debtors")[1] and as reorganized Debtors as of the Effective Date (in such capacities, the "Reorganized U.S. Entities"), World Color Press Inc. (formerly known as Quebecor World, Inc.), in its capacities as a Canadian Debtor (as defined below) ("QWI") and as the parent company of the reorganized Debtors and Canadian Debtors as of the Effective Date (the "Reorganized Company"), and Eugene Davis, as trustee of the Litigation Trust referred to herein (in such capacity, the "Litigation Trustee"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Modified Third Amended Joint Plan of Reorganization of Quebecor World (USA) Inc. and Certain Affiliated Debtors and Debtors-In-Possession dated July 1, 2009 (including all exhibits attached thereto or referenced therein, as the same may be amended, modified or supplemented, the "Plan").

### Background

A.    On January 21, 2008, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

B.    On January 21, 2008, QWI and the Debtors (collectively, in such capacities, the "Canadian Debtors") commenced proceedings under the Companies' Creditors Arrangement Act (Canada) for a plan of arrangement and compromise (the "Canadian Proceedings") before the Superior Court of the Province of Quebec, Commercial Division, for the Judicial District of Montreal (the "Canadian Court").

C.    The Plans and the Confirmation Orders provide that the Litigation Trust shall be established for pursuit of the Contributed Claims[2] and shall become effective on the Effective

---

[1] The Debtors are: Quebecor Printing Aviation, Inc.; Quebecor Printing Holding Company; Quebecor World (USA) Inc.; Quebecor World Arcata Corp.; Quebecor World Atglen Inc.; Quebecor World Atlanta II LLC; Quebecor World Book Services LLC; Quebecor World Buffalo Inc.; Quebecor World Capital Corporation; Quebecor World Capital II GP; Quebecor World Capital II LLC; Quebecor World Century Graphics Corporation; Quebecor World Dallas II Inc.; Quebecor World Dallas, L.P.; Quebecor World DB Acquisition Corp.; Quebecor World Dittler Brothers Inc.; Quebecor World Dubuque Inc.; Quebecor World Eusey Press Inc.; Quebecor World Fairfield Inc.; Quebecor World Great Western Publishing Inc.; Hazelton Inc.; Quebecor World Infiniti Graphics Inc.; Quebecor World Johnson & Hardin Co.; Quebecor World KRI Inc.; Quebecor World Krueger Acquisition Corp.; Quebecor World Lease GP; Quebecor World Lease LLC; Quebecor World Lincoln Inc.; Quebecor World Logistics Inc.; Quebecor World Loveland Inc.; Quebecor World Magna Graphic Inc.; Quebecor World Memphis LLC; Quebecor World Mid-South Press Corporation; Quebecor World Mt. Morris II LLC; Quebecor World Nevada II LLC; Quebecor World Nevada Inc.; Quebecor World Northeast Graphics Inc.; Quebecor World Olive Branch Inc.; Quebecor World Pendell Inc.; Quebecor World Petty Printing Inc.; Quebecor World Printing (USA) Corp.; Quebecor World Rai Inc.; Quebecor World Retail Printing Corporation; Quebecor World San Jose Inc.; Quebecor World Systems Inc.; Quebecor World Taconic Holdings Inc.; Quebecor World Up / Graphics LLC; Quebecor World Waukee Inc.; QW Memphis Corp.; QW New York Corp.; The Webb Company; WCP-D, Inc.; WCZ, LLC.

[2] "Contributed Claims" shall have the meaning ascribed to it in the Plan, provided, however, that Contributed Claims shall not include any Causes of Action against QWI.

Date.  On the Effective Date, the Contributed Claims shall be transferred to the Litigation Trust in exchange for the Litigation Trust Interests for the benefit of the Litigation Trust Beneficiaries. Upon transfer of the Contributed Claims to the Litigation Trust, the Debtors and the Reorganized Company shall have no interest in or with respect to the Contributed Claims or the Litigation Trust Interests.

D.      On July 2, 2009, the U.S. Bankruptcy Court entered an order (the "U.S. Confirmation Order") confirming the Plan;

E.      On June 30, 2009, the Canadian Court issued an order (the "Sanction Order," and together with the U.S. Confirmation Order, the "Confirmation Orders") sanctioning the Second Amended and Restated Plan of Reorganization and Compromise of Quebecor World Inc. dated June 8, 2009 (including all exhibits attached thereto or referenced therein, as such plan may be amended, modified or supplemented, the "Canadian Plan," and together with the Plan, the "Plans");

F.      The Plans and the Confirmation Orders provide that, on the Effective Date, the Debtors shall grant, assign, transfer, convey and deliver all of their right, title, and interest in and to the Contributed Claims including, without limitation, interest on any of the foregoing (together with any and all other earnings, other income or other assets of the Trust, the "Trust Assets"), to the Litigation Trust (as defined below) on behalf, and for the benefit, of the holders of Allowed Syndicate Claims, Allowed SocGen Claims, Allowed Class 4 Claims and Affected Unsecured Creditors with Proven Claims under Section 2.5(b)(ii) of the Canadian Plan (as such terms are defined in the Canadian Plan) (the "Canadian Litigation Trust Beneficiaries," and such Proven Affected Unsecured Claims, the "Proven Canadian Unsecured Claims") and each of their respective successors, assigns and heirs (collectively, the "Litigation Trust Beneficiaries") solely for distribution to the Litigation Trust Beneficiaries in accordance with this Agreement, the Plans and the Confirmation Orders;

G.      The Litigation Trust is being created pursuant to this Agreement for the purposes of liquidating the Trust Assets and distributing or utilizing the proceeds thereof (the "Contributed Claims Recoveries" or "Trust Proceeds") to or for the benefit of the Litigation Trust Beneficiaries, as described in Article VI of the Plan; and

H.      The Litigation Trustee shall have all powers necessary to implement the provisions of this Agreement and administer the Litigation Trust, including, without limitation, the power to:  (a) prosecute the Contributed Claims for the benefit of the Litigation Trust; (b) preserve, maintain and liquidate the Trust Assets; (c) distribute to, or utilize, as applicable, the Contributed Claims Recoveries for the benefit of the Litigation Trust Beneficiaries; and (d) otherwise perform the functions and take the actions provided for or permitted in the Plans, the Confirmation Orders, this Agreement or in any other agreement executed pursuant to the Plans, in each case subject to the provisions of Section 6.3 of this Agreement regarding the Governing Board.

**Agreement**

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants contained herein, the Debtors and the Litigation Trustee agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

1.1    Creation of Trust.  The Debtors and the Litigation Trustee, pursuant to the Plans and the Confirmation Orders and in accordance with the applicable provisions of chapter 11 of the Bankruptcy Code and the CCAA, hereby constitute and create the "Quebecor World Litigation Trust" (the "Litigation Trust" or "Trust").  In connection with the exercise of the Litigation Trustee's power hereunder, the Litigation Trustee may use this name or such variation thereof as the Litigation Trustee sees fit.

1.2    Purpose of Trust.  The purpose of this Agreement is to implement the Plans on behalf, and for the benefit, of the Litigation Trust Beneficiaries, and to serve as a mechanism for prosecuting the Contributed Claims, converting to cash the Trust Assets and distributing the Contributed Claims Recoveries to or for the benefit of the Litigation Trust Beneficiaries in accordance with this Agreement, the Plans and the Confirmation Orders.

1.3    Transfer of Trust Assets.

(a)    In partial satisfaction (in addition to the other distributions provided for under the Plans) of all Allowed Syndicate Claims, Allowed SocGen Claims, Allowed Class 4 Claims and Proven Canadian Unsecured Claims, the Debtors hereby transfer as of the Effective Date, for the sole benefit of the Litigation Trust Beneficiaries, pursuant to Bankruptcy Code sections 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plans and the Confirmation Orders, the Trust Assets to the Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under Bankruptcy Code section 1141(c).  Nothing in this Agreement is intended to, or shall be construed to, effect a release, extinguishment or compromise of any Contributed Claim transferred to the Litigation Trust pursuant to this Agreement.  The Trust Assets are to be held and utilized or distributed, as applicable, by the Litigation Trustee in accordance with the terms hereof for the benefit of the Litigation Trust Beneficiaries, and for no other party, subject to the further covenants, conditions and terms hereinafter set forth.

(b)    To the extent any assets of the Debtors ("Assets") cannot be transferred to the Trust because of a restriction on transferability under applicable nonbankruptcy law that is not superseded by Bankruptcy Code section 1123 or any other provision of the Bankruptcy Code, such Assets shall be retained by the applicable Debtors and Estates.  The proceeds of any such Asset retained by the Debtors and the Estates shall be allocated to the Trust pursuant to the Plans as if such transfer had not been restricted under applicable nonbankruptcy law.  The Litigation Trustee may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Assets retained by the Debtors.  To the extent necessary or appropriate, the Litigation Trustee may be designated as a representative of one or more of the Estates pursuant to Bankruptcy Code section 1123(b)(3)(B) to enforce or pursue any rights, claims or Causes of Action that remain property of the Estates after the Effective Date.

(c)    For all federal, state and local income tax purposes, each holder of an Allowed Syndicate Claim, Allowed SocGen Claim, Allowed Class 4 Claim, and a Proven Canadian Unsecured Claim shall be treated as transferring a portion of such Allowed Claim to the applicable Debtors in exchange for the holder's Pro Rata share of the Trust Assets (subject to any liabilities of the Debtors assumed by the Trust), and then transferring the holder's Pro Rata share of the Trust Assets (subject to such liabilities) to the Trust in exchange for such holder's Pro Rata share of the Litigation Trust Interests in accordance with the terms of <u>Section 4.3(a)</u> of this Agreement (also sometimes referred to herein as "<u>Beneficial Interests</u>").

(d)    In accordance with the procedure described in Section VII.F.11.h of the Disclosure Statement, no later than 180 days following the Effective Date, the Litigation Trustee and the Debtors, in reliance upon such professionals as the Litigation Trustee and the Debtors may retain, shall make a good faith valuation of the Trust Assets (and liabilities) as of the Effective Date and shall provide such valuation in writing to each Litigation Trust Beneficiary (which may include posting such valuation on a website established by the Trust). Subject to the proceeding sentence, such valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Litigation Trustee and the Litigation Trust Beneficiaries) for federal and other income tax purposes.

1.4    <u>Liquidation of Trust Assets</u>. The Litigation Trustee shall, in an expeditious but orderly manner and subject to the other provisions of the Plans, the Confirmation Orders and this Agreement, liquidate and convert to cash the Trust Assets, make timely distributions in accordance with the terms hereof and not unduly prolong the existence of the Trust. The Litigation Trustee shall exercise reasonable business judgment and liquidate the Trust Assets to maximize net recoveries to the Litigation Trust Beneficiaries; provided that the Litigation Trustee shall be entitled to take into consideration the risks, timing and costs of potential actions in making determinations as to the maximization of such recoveries. Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all Contributed Claims or otherwise or through the sale or other disposition of the Trust Assets (in whole or in combination, and including the sale of any or all Contributed Claims). Pursuant to an agreed upon budget in accordance with <u>Section 4.4</u> of this Agreement, the Litigation Trustee may incur any reasonable and necessary expenses in connection with the liquidation of the Trust Assets and distribution of the Trust Proceeds.

1.5    <u>Appointment and Acceptance of Litigation Trustee</u>. The Litigation Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The Litigation Trustee accepts the Trust created by this Agreement and the grant, assignment, transfer, conveyance and delivery to the Litigation Trustee, on behalf, and for the benefit, of the Litigation Trust Beneficiaries, by the Debtors of all of their respective right, title and interest in the Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plans and in the Confirmation Orders.

1.6    <u>No Reversion to Debtors</u>. In no event shall any part of the Trust Assets revert to or be distributed to any of the Debtors.

1.7    <u>Incidents of Ownership</u>. The Litigation Trust Beneficiaries shall be the sole beneficiaries of the Trust and the Trust Assets, and Litigation Trustee shall retain only such

1934, as amended, shall be permitted and any such transfer, assignment, pledge or hypothecation shall be void *ab initio*.

(c)     The holder effecting a disposition of a Beneficial Interest or any part thereof shall pay, or reimburse the Trust for, all costs incurred by the Trust in connection with such disposition (including, without limitation, the legal fees incurred in connection with the legal opinions referred to in Section 2.5(b)) on or before the tenth day after the receipt by that person of the Trust's invoice for the amount due.  If payment is not made by the date due, the person owing that amount shall pay interest on the unpaid amount from the date due until paid at a rate per annum equal to 10% plus any costs, including attorneys' fees, incurred in the collection of such amount.

2.6     Limited Liability.  No provision of this Agreement, the Plans or the Confirmation Orders, and no mere enumeration herein of the rights or privileges of any Beneficial Interest holder, shall give rise to any liability of such Beneficial Interest holder solely in its capacity as such, whether such liability is asserted by the Debtors, by creditors or employees of the Debtors, or by any other Person.  Beneficial Interest holders are deemed to receive the Trust Assets in accordance with the provisions of this Agreement, the Plans and the Confirmation Orders in partial exchange for their Allowed Syndicate Claims, Allowed SocGen Claims, Allowed Class 4 Claims and Proven Canadian Unsecured Claims, as applicable, without further obligation or liability of any kind, but subject to the provisions of this Agreement.

## ARTICLE III
## DURATION AND TERMINATION OF TRUST

3.1     Duration.  The Trust shall become effective upon the Effective Date and shall remain and continue in full force and effect until terminated as provided herein.  The Trust shall terminate (the "Termination Date") upon the occurrence of the earlier of (a) the full liquidation, administration and distribution of the Trust Assets in accordance with the Plans, the Confirmation Orders and this Agreement and the full performance of all other duties and functions of the Litigation Trustee set forth in the Plans, the Confirmation Orders and this Agreement or (b) the fifth anniversary of the Effective Date, subject to one or more extensions of not more than one (1) year, which must be approved by the Bankruptcy Court pursuant to the terms set forth in the Plans within 30 days prior to the then-current termination date and provided that the Litigation Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service to the effect that any such extension would not adversely affect the status of the Trust as a grantor trust for federal income tax purposes.  Notwithstanding anything to the contrary in this Agreement, in no event shall the Litigation Trustee unduly prolong the duration of the Trust, and the Litigation Trustee shall, in the exercise of its reasonable business judgment and in the interests of the Litigation Trust Beneficiaries, at all times prosecute the Contributed Claims in a manner reasonably calculated to maximize net recoveries to the Litigation Trust Beneficiaries.

3.2     Continuance of Trust for Winding Up.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Litigation Trustee shall continue to act as such until its duties have been fully performed.  Upon

distribution of all the Trust Assets, the Litigation Trustee shall retain the books, records and files that shall have been delivered to or created by the Litigation Trustee. At the Litigation Trustee's discretion, all of such records and documents may be destroyed at any time following the date that is six years after the final distribution of Trust Assets (unless such records and documents are necessary to fulfill the Litigation Trustee's obligations pursuant to <u>Sections 4.7(a) and 6.1</u> hereof) subject to the terms of any joint prosecution and common interests agreement(s) to which the Litigation Trustee may be a party. Except as otherwise specifically provided herein, upon the final distribution of Trust Assets, the Litigation Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Litigation Trust Beneficiaries as provided in <u>Section 4.4</u> hereof and as may be imposed on the Litigation Trustee by virtue of <u>Section 6.1</u> hereof, the Beneficial Interests shall be cancelled and the Trust will be deemed to have been dissolved.

### ARTICLE IV
### ADMINISTRATION OF TRUST

4.1     <u>Payment of Claims, Expenses and Liabilities</u>. Subject to the budget agreed upon by the Governing Board in accordance with <u>Section 4.4</u> of this Agreement, the Litigation Trustee shall expend the cash of the Trust: (a) to pay reasonable administrative expenses of the Trust that are incurred (including, but not limited to, any taxes imposed on the Trust or professional fees and expenses in connection with the administration and liquidation of the Trust Assets and preservation of books and records as provided in <u>Section 3.2</u> hereof); (b) to pay principal, interest and other amounts owing in respect of the Funding Loan (as defined below) and to satisfy other obligations or other liabilities incurred or assumed by the Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plans, the Confirmation Orders, this Agreement and applicable U.S. and non U.S. law (it being understood that the Trust has not assumed any obligations or liabilities of the Debtors), including fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Trust Assets, the reasonable, documented out-of-pocket expenses of the Governing Board members and the costs of investigating, prosecuting and resolving the Contributed Claims; and (c) to satisfy any other obligations of the Trust expressly set forth in the Plans or this Agreement.

4.2     <u>Funding of the Trust</u>. The Litigation Trust will be funded by a multi-draw secured loan from the Reorganized Company in an aggregate amount not to exceed $5 million to be used by the Litigation Trust for the purposes of pursuing the Contributed Claims and otherwise administering the Trust for the benefit of the Litigation Trust Beneficiaries (including all principal, interest and other amounts owing to the Reorganized Company in respect of such loan, the "<u>Funding Loan</u>"). The Funding Loan shall be repaid in full from the Litigation Trust from the proceeds of any Trust Assets, before any funds are distributed to the Litigation Trust Beneficiaries and shall have a final maturity on the earlier of the (i) Termination Date or (ii) the fifth business day following the date on which any payment owed to the Litigation Trust pursuant to a final, non-appealable resolution of the Private Notes Adversary Proceeding is due. No further amounts shall be paid or payable by the Reorganized Debtors or any of the Reorganized Company to the Litigation Trust for any purpose whatsoever and the source of funds and repayment thereof for any additional contributions required by the Litigation Trust shall be determined by the Litigation Trustee in consultation with the Governing Board. The Funding Loan shall have an interest rate of 11% per annum and shall be non-recourse to each of

-8-

Trustee after the date of any related proof of claim, or (c) in the case of a holder of a Beneficial Interest whose Allowed Claims are governed by an agreement and administered by a Servicer, at the address contained in the official records of such Servicer as of the Effective Date. Each Litigation Trust Beneficiary shall be responsible for providing the Litigation Trustee with timely written notice of any change in address. The Litigation Trustee is not obligated to make any effort to determine the correct address of any Litigation Trust Beneficiary.

4.4     Undeliverable Property.

(a)     If any distribution of Trust Proceeds or other Trust Assets to a Litigation Trust Beneficiary is returned to the Litigation Trustee as undeliverable, no further distribution to such Litigation Trust Beneficiary shall be made unless and until the Litigation Trustee is notified in writing of such Litigation Trust Beneficiary's then-current address, at which time all missed distributions shall be made to such Litigation Trust Beneficiary without interest. For purposes of this Agreement, undeliverable distributions shall include checks sent to a Litigation Trust Beneficiary, respecting distributions to such Litigation Trust Beneficiary, which checks have not been cashed within six months following the date of issuance of such checks. Undeliverable distributions shall remain in the possession of the Litigation Trustee until the next Distribution Date that the relevant distribution becomes deliverable (in which event it shall be distributed to such Litigation Trust Beneficiary), subject to Section 4.3(b) hereof.

(b)     Any Litigation Trust Beneficiary that does not assert a claim for an undeliverable distribution of Trust Proceeds or other Trust Assets held by the Litigation Trust on or prior to the first anniversary of the Termination Date shall no longer have any claim to or interest in the funds represented by such undeliverable distribution. In such cases, all title to and all Beneficial Interests in the funds represented by any such undeliverable distributions shall revert to or remain in the Trust and shall be redistributed to the remaining holders of Beneficial Interests in accordance with Section 4.3(a) hereof.

4.5     Reports.

(a)     The Litigation Trustee shall deliver reports to members of the Governing Board not later than 15 days prior to each fiscal quarter. Such reports shall specify in reasonable detail (i) the status of the Contributed Claims, including any settlements entered into by the Litigation Trust, (ii) the fees and expenses of the Trust, the Litigation Trustee and the Litigation Trust Professionals incurred and/or earned during the most recent calendar quarter, (iii) the aggregate fees and expenses of the Trust, the Litigation Trustee and the Litigation Trust Professionals incurred and/or earned since the date of this Agreement, (iv) the amount of Trust Proceeds received by the Trust during the most recent calendar quarter, (v) the aggregate amount of Trust Proceeds received by the Trust since the date of this Agreement, (vi) the calculation of the Trust Assets Available for Distribution for the next Periodic Distribution Date, including the amounts of available Trust Proceeds and the Expense Reserve, (vii) the aggregate amount of distributions from the Litigation Trust to Litigation Trust Beneficiaries since the date of this Agreement, and (viii) such other information as the Governing Board may reasonably request from time to time. The Litigation Trustee shall also timely prepare, file and distribute such additional statements, reports and submissions (A) as may be necessary to cause the Trust and

-11-

9.7     Cooperation.  The Debtors shall turn over or otherwise make available to the Litigation Trustee at no cost to the Trust or the Litigation Trustee, copies of all books and records reasonably required by the Litigation Trustee to carry out its duties hereunder, and agree to otherwise reasonably cooperate with the Litigation Trustee in carrying out its duties hereunder.

9.8     Entire Agreement.  This Agreement and the Annexes attached hereto contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

9.9     Amendment.  This Agreement may be amended by (a) order of the Bankruptcy Court or (b) approval by the Litigation Trustee and all members of the Governing Board; provided, however, that the approval of the Bankruptcy Court and/or the Canadian Court, as applicable, shall be required for any changes or amendments to this Agreement that are inconsistent with the terms of the Plans or the Confirmation Orders.

9.10    Meanings of Other Terms.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plans or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words herein and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.  The term "including" shall mean "including, without limitation."

9.11    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

**[Remainder of Page Blank — Signature Page Follows]**

-24-

## SECOND AMENDMENT TO QUEBECOR
## WORLD LITIGATION TRUST AGREEMENT

This Second Amendment to the Quebecor World Litigation Trust Agreement (this "Amendment") seeks to amend that certain Quebecor World Litigation Trust Agreement, effective as of July 21, 2009, as amended February 19, 2010 (the "Agreement").

**WHEREAS**, the parties desire to amend the Agreement as provided herein.

**NOW, THEREFORE**, in consideration of the mutual promises herein set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## AMENDMENTS

1.       Section 3.1 of the Agreement is hereby amended and restated to read in its entirety as follows (added language bolded and italicized):

"3.1    Duration.  The Trust shall become effective upon the Effective Date and shall remain and continue in full force and effect until terminated as provided herein.  The Trust shall terminate (the "Termination Date") upon the occurrence of the earlier of (a) the full liquidation, administration and distribution of the Trust Assets in accordance with the Plans, the Confirmation Orders and this Agreement and the full performance of all other duties and functions of the Litigation Trustee set forth in the Plans, the Confirmation Orders and this Agreement, (b) ***upon unanimous consent of the (i) Trustee and (ii) Governing Board and order of the Bankruptcy Court or (c)*** the fifth anniversary of the Effective Date, subject to one or more extensions of not more than one (1) year, which must be approved by the Bankruptcy Court pursuant to the terms set forth in the Plans within 30 days prior to the then-current termination date and provided that the Litigation Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service to the effect that any such extension would not adversely affect the status of the Trust as a grantor trust for federal income tax purposes.  Notwithstanding anything to the contrary in this Agreement, in no event shall the Litigation Trustee unduly prolong the duration of the Trust, and the Litigation Trustee shall, in the exercise of its reasonable business judgment and in the interest of the Litigation Trust Beneficiaries, at all times prosecute the Contributed Claims in a manner reasonably calculated to maximize net recoveries to the Litigation Trust Beneficiaries."

## ARTICLE II
## MISCELLANEOUS

1.       Construction.    This Amendment shall be governed by and construed in accordance with the Agreement.

2.       Counterparts.  This Amendment may be executed in any number of counterparts, and each counterpart shall constitute an original instrument, but all of such separate counterparts shall constitute one and the same agreement. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall

create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

## THIRD AMENDMENT TO QUEBECOR
## WORLD LITIGATION TRUST AGREEMENT

This Third Amendment to the Quebecor World Litigation Trust Agreement (this "Amendment") seeks to amend that certain Quebecor World Litigation Trust Agreement, effective as of July 21, 2009, as previously amended on or around February 19, 2010 and April 27, 2015 (the "Agreement").

**WHEREAS**, the parties desire to amend the Agreement as provided herein.

**NOW, THEREFORE**, in consideration of the mutual promises herein set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## AMENDMENTS

1.       Section 4.4 of the Agreement is hereby amended and restated to read in its entirety as follows:

4.4      <u>Undeliverable Property</u>.

(a)      If any distribution of Trust Proceeds or other Trust Assets to a Litigation Trust Beneficiary is returned to the Litigation Trustee as undeliverable, no further distribution to such Litigation Trust Beneficiary shall be made unless and until the Litigation Trustee is notified in writing of such Litigation Trust Beneficiary's then-current address, at which time all missed distributions shall be made to such Litigation Trust Beneficiary without interest, subject to Section 4.4(b) hereof.  For purposes of this Agreement, undeliverable distributions shall include checks sent to a Litigation Trust Beneficiary, respecting distributions to such Litigation Trust Beneficiary, which checks have not been cashed within six months following the date of issuance of such checks. Undeliverable distributions shall remain in the possession of the Litigation Trustee until the next Distribution Date that the relevant distribution becomes deliverable (in which event it shall be distributed to such Litigation Trust Beneficiary), subject to Sections 4.3(b) & 4.4(b) hereof.

(b)      Any Litigation Trust Beneficiary that does not assert a claim for an undeliverable distribution of Trust Proceeds or other Trust Assets held by the Litigation Trust on or prior to the first anniversary of the last distribution proceeding the date hereof shall no longer have any claim to or interest in the funds represented by such undeliverable distribution.  In such cases, all title to and all Beneficiary Interests in the funds represented by any such undeliverable distributions shall revert to or remain in the Trust and shall be redistributed to the remaining holders of Beneficiary Interests in accordance with Section 4.3(a) hereof, and the claim of such Litigation Trust Beneficiary or successor to such Litigation Trust Beneficiary to any Trust Assets shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. Any distributions with respect to the Trust returned as undeliverable following the date hereof shall be provided for by order of the Court.

## ARTICLE II
## MISCELLANEOUS

1.    Construction.    This Amendment shall be governed by and construed in accordance with the Agreement.

2.    Counterparts.    This Amendment may be approved in any number of counterparts, attached hereto, and each counterpart shall constitute an original instrument, but all of such separate counterparts shall constitute one and the same agreement. In the event that any approval is delivered by electronic mail, such approval shall create a valid and binding obligation of the party sending such electronic mail (or on whose behalf such electronic mail is sent) with the same force and effect as if such approval was provided by original signature of such sender.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*