UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| Quebecor World (USA) Inc., *et al.*, | Case No. 08-10152 |
| Debtors. | Jointly Administered |

**ORDER GRANTING MOTION TO TERMINATE THE LITIGATION TRUST**

Upon the motion (the "***Motion***")[1] of the Trustee for entry of the Order terminating the Litigation Trust; and it appearing that the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and this appearing to be a core proceeding pursuant to 28 U.S.C. § 157(b); and venue appearing proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion and the opportunity for a hearing on the Motion was appropriate, and that no other or further notice need be given; and the Court having considered the papers and arguments of counsel at the hearing in support of the Motion, and after due deliberation and sufficient cause appearing therefore; and the Court having found that the relief requested in the Motion is in the best interests of the Litigation Trust Beneficiaries, **IT IS HEREBY ORDERED THAT:**

1. The Motion is hereby granted in its entirety.

2. The Trust Agreement Amendment is approved.

3. The Trust hereby is terminated upon the date on which (i) all remaining open Preference Actions have been finally resolved and the applicable adversary proceedings in the Bankruptcy Case have been withdrawn and closed by the Trust and (ii) the Interim Final

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Motion.

Distribution has been made (together, the ***"Conditions Precedent"***), provided that both of such Conditions Precedent shall have occurred by or on a date that is not later than 10 business days following the date of entry of this Order. Should the Conditions Precedent not occur on or before the date that is 10 business days following the date of entry of this Order, this Order shall be null and void at the sole election of the Reorganized Debtor upon written notice to the Trustee.

4. Except as otherwise set forth herein, the Trustee and each of the Governing Board members are discharged, as of the Termination Date, from his or her respective duties under the Plan and the Trust Agreement.

5. Notwithstanding anything contained herein to the contrary, the Trustee's discharge above shall affect neither the Trustee's obligation nor his authority to take all steps necessary to wind-down the Trust and otherwise comply with the Trust Agreement with respect thereto, including, without limitation, the Wind-Up Activities. The Wind-up Activities shall include, among other things:

   a. the retention of the Trust's books and records as required by the Trust Agreement;

   b. federal tax reporting obligations for distributions made by the Trust prior to termination; and

   c. providing support as needed to the Reorganized Debtor in connection with transfer, retention and distribution of the Disputed Claims Reserve and the Default Proceeds, as contemplated in the Motion.

6. Wind-Down Funds in the amount of $91,750 shall be withheld from the Interim Final Distribution in order to cover reasonable and necessary costs and expenses, including out-of-pocket fees (including professional fees) associated with the Wind-Down Activities and the purchase of a tail policy with respect to the liability insurance coverage for the Governing Board and the Trustee. Following the conclusion of the Wind-Down Activities, should any Wind-

Down Funds remain after the payment by the Trustee of all costs and expenses associated therewith, such funds shall be donated to a charitable organization of the Trustee's choice.

7. As of the Termination Date, the Trust's professionals shall not be liable for any act or omission in their capacity on behalf of the Trustee or the Governing Board, except for their own gross negligence or willful misconduct.

8. As soon as practicable following the Termination Date, and only following the Conditions Precedent, the Trustee is authorized to transfer the Disputed Claims Reserve and the Defaults to the Reorganized Debtor in such form and manner as mutually acceptable to the Trustee and the Reorganized Debtor (the "*Trust Assets Transfer*") to be held and distributed as set forth in the Motion and this Order.

9. Other than in respect of the Wind-Up Activities, the Trust Assets Transfer shall be in full and final satisfaction of the Trustee's obligations with respect to the Litigation Trust Beneficiaries and the Trustee shall be afforded all of the protections regarding distributions provided in the Trust Agreement.

10. The Reorganized Debtor shall hold the funds comprising the Disputed Claims Reserve and the Default Proceeds in escrow and, upon final resolution of all the Disputed Claims, shall distribute the Disputed Claims Reserve and the Default Proceeds as part of the Final Distribution to all applicable Litigation Trust Beneficiaries in accordance with the Plan.

11. To the extent any amounts become available on account of Undeliverable Distributions arising from the Interim Final Distribution after the transfer of the of the Disputed Claims Reserve to the Reorganized Debtor, all such amounts shall be forwarded by the Trust to the Reorganized Debtor to be added to the Disputed Claims Reserve.

12. With respect to any distribution contemplated herein, the Reorganized Debtor shall be considered the "Disbursing Agent" (as defined in the Plan) and shall be afforded all of the rights protections provided thereto in the Plan, including, without limitation, in section 8.10(d) of the Plan. The Reorganized Debtor shall be responsible for any tax reporting obligations required or necessitated by the Final Distribution.

13. Prior to such Final Distribution, the Reorganized Debtor shall collect any proceeds paid on account of the Defaults, and the Reorganized Debtor shall use Reasonable Efforts to sell any remaining Defaults, with the Default Proceeds paid on account of the Defaults and/or realized from the sale thereof to be held by the Reorganized Debtor for inclusion in the Final Distribution; *provided*, *however*, that "Reasonable Efforts" shall be defined as (i) contacting not less than two firms which normally and customarily purchase default judgments, including, but not necessarily limited to, ASK Financial LLP and Oak Point Partners and (ii) selling the Defaults in exchange for the best offer received, if any.

14. The Final Distribution shall be in full and final satisfaction of the Reorganized Debtor's obligations with respect to its receipt and retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults, and any distribution of the Disputed Claims Reserve and the Default Proceeds, including the Final Distribution, or otherwise on account of its actions or performance as contemplated by the Motion and this Order, and no party or entity, including, without limitation, any holder of any Claim, Disputed Claim or any Litigation Trust Beneficiary shall have recourse against any Debtor, the Reorganized Debtor, Quad, nor to any of their respective officers, directors, designees, successors, partners, affiliates, agents, employees, representatives, attorneys, or professionals on account of any of the Reorganized Debtor's receipt and retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults,

and any distribution of the Disputed Claims Reserve and the Default Proceeds, including the Final Distribution, or otherwise on account of its actions or performance as contemplated by the Motion and this Order, except for any such party's own gross negligence or willful misconduct.

15. The Reorganized Debtor shall be authorized and entitled to reimbursement from the Disputed Claims Reserve on account of reasonable and necessary costs and expenses, including out-of-pocket fees (including professional fees) and expenses incurred by the Reorganized Debtor, with respect to the Reorganized Debtor's rights and responsibilities provided for in the Motion and this Order, including, without limitation, with respect to its receipt and retention of the Disputed Claims Reserve and the Default Proceeds, the sale of the Defaults, and the distributions contemplated in the Motion and this Order. All compensation and other amounts payable to, or on behalf of, the Reorganized Debtor are authorized to be deducted from the Disputed Claims Reserve transferred by the Trust to the Reorganized Debtor hereunder.

16. In the event this Order conflicts with the Trust Agreement or the Plan, the terms of this Order shall prevail.

17. The Court shall retain jurisdiction to interpret, enforce and resolve any disputes arising under or related to this Order.


Dated: March 11, 2016
New York, New York


/s/ *James L. Garrity, Jr.*
THE HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE